

The following constitutes the order of the Court.
Signed: January 27, 2020

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

AMANDA DONOHUE,

        Debtor.

Case No.  19-41271 CN
Chapter 13

**ORDER ON OBJECTION TO CLAIM**

     On January 10, 2020 this court conducted a hearing on Debtor Amanda Donohue's objection to the proof of claim filed by Gaia Finance, LLC.  Donohue contends that the 240% interest rate that Gaia charged on its pre-petition line of credit is unconscionable under California law.  Gaia did not respond to the objection and did not appear at the January 10th hearing.  For the reasons stated below, this court concurs with Donohue's assessment.

     Donohue filed her Chapter 13 bankruptcy on May 31, 2019, and listed Gaia as holding a $4,000 general, unsecured claim on her Schedule E/F[1].  Donohue's confirmed Chapter 13 plan will pay her unsecured creditors in full.  On August 7, 2019 Gaia timely filed a proof of claim for $8,023.30.   Gaia attached to its claim a copy of the finance agreement executed by Donohue and an itemized statement of the interest and fees.  The proof of claim discloses that Gaia provided Donohue with a $4,000 line of credit on December 27, 2017.  The "Line of Credit Disclosure And Account Agreement" (the "Agreement") states (in large print) that Gaia would charge a 240% annual

---

[1] Donohue's Schedule E/F lists "Advance Capital" as the creditor.  Since Gaia Finance, LLC filed the proof of claim, this court will refer to the creditor as "Gaia."

1

**ORDER**

percentage rate on its cash advances, and that Donohue could rescind any requested cash advance by returning the funds within a certain time frame. Donohue electronically signed the Agreement and thereafter was wired the full $4,000 credit line. The Agreement does not indicate that Donohue requested the full $4,000 in a single cash advance. Gaia's proof of claim consists of the $4,000 cash advance and $4,023.90 in accrued interest. Given when she received the funds, the 240% interest rate, and the Chapter 13 petition date, Donohue made some payments on the line of credit before she filed her bankruptcy.

Unfortunately, Donohue's Schedule E/F indicates that she is no stranger to high interest consumer loans. In this instance, Donohue needed funds to repair her car, washer and dryer, and to pay for certain family and pet expenses. She received a "snail-mail" solicitation from Gaia stating that she was "pre-approved" for a cash advance, and she was directed to Gaia's website where she could, after providing additional information, finalize the transaction. Donohue provided the required personal information, electronically signed the Agreement, and received the full $4,000 in a single cash advance, notwithstanding that Gaia never asked how much of an initial cash advance she required. While Donohue does not recall reviewing the actual loan terms, the Agreement clearly states the 240% interest rate. She contends, however, that while she was somewhat familiar with the cost of consumer borrowing and anticipated that the loan would be costly (given her credit history and prior bankruptcy filing), she never would have borrowed the funds if she knew that the loan carried a 240% interest rate.

Donohue contends that Gaia's loan is unconscionable under California law. Donohue's argument must be construed in the context of a claim objection under Bankruptcy Code § 502. Bankruptcy Code § 502(a) provides in pertinent part that "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party interest . . . objects." Section 502(b), in turn, lists the many grounds upon which a debtor may object to a claim, including that the claim is "unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

In other words, once a creditor files a proof of claim, the objecting party must provide a

Case: 19-41271    Doc# 65    Filed: 01/27/20    Entered: 01/27/20 17:10:18    Page 2 of 6

cognizable ground to disallow the claim.[2]  Generally, ". . .the claimant must allege facts sufficient to

support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is "prima

facie" valid. . . . The burden of going forward then shifts to the objector to produce evidence

sufficient to negate the prima facie validity of the filed claim."  *Ashford v. Consolidated Pioneer*

*Mortg. (In re Consolidated Pioneer Mortg.), 178 B.R. 222, 226* (Bankr.9th Cir. 1995).  In instances

where the objection is premised on an affirmative defense, the objecting party retains the burden.

*Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed. 2d 13 (2000).

The doctrine of unconscionability is an affirmative defense under California law and

California courts have applied the doctrine to high interest consumer loans.  *See* Cal. Civ. Code §

1670.5; Cal. Fin. Code § 22302; *De La Torre v. CashCall, Inc.*, 5 Cal.5th 966 (2018); *Grand*

*Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1347 (2015).  "As long

established under California law, the doctrine of unconscionability reaches contract terms relating to

the price of goods or services exchanged. . . .  Whether the price of a bargain is 'unreasonably and

unexpectedly harsh' depends on more than just a single printed number, so we examine not only the

price term itself but other provisions and circumstances affecting a transactions benefits and burdens.

Allegations that the price exceeds cost or fair value, standing alone, do not state a cause of action."

[citations omitted.]  *De La Torre v. CashCall, Inc.*, 5 Cal.5th 966, 975-76.

The California Supreme Court in *CashCall* thoroughly described the challenges of applying

the doctrine of unconscionability to high interest consumer loans.

> "Unconscionability is a flexible doctrine.  It is meant to ensure that in circumstances
> indicating an absence of meaningful choice, contracts do not specify terms that are
> "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience."  It
> is true that unconscionability has been subject to "various nonexclusive formulations"
> and differing analytical approaches. Nonetheless, at least one thing about the doctrine
> is clear: it requires more than just looking at one particular term in a contract,
> comparing it to a fixed benchmark, and declaring the term unconscionable. [¶]
> Instead, unconscionability requires oppression or surprise    that is, procedural
> unconscionability   along with the overly harsh or one-sided results that epitomize
> substantive unconscionability.  Some measure of both procedural and substantive
> unconscionability must be present    although given the sliding-scale nature of the

---

[2]  This is particularly so where the proof of claim is executed and filed in accordance with
Rule 3001.  Gaia properly executed and filed its claim; as a result, the claim constitutes "prima facie
evidence" of its validity and amount. *See* Federal Rule of Bankruptcy Procedure 3001(f).

doctrine, more of one kind mitigates how much of the other kind is needed. Even where a party complains of a single contract clause, the court usually must still examine the bargaining process for any procedural unfairness. The court must consider whether there was (1) undue oppression arising from "an inequality of bargaining power," including the various factors tending to show relative bargaining power such as the parties' sophistication, their cognitive limitations, and the availability of alternatives; and (2) surprise owing to, for example, the "terms of the bargain [being] hidden in a prolix printed form" or pressure to hurry and sign. ... [¶] In assessing the presence of substantive unconscionability, a court may also need to consider context. When a price term is alleged to be substantively unconscionable, we have explained that it is not sufficient for a court to consider only whether "the price exceeds cost or fair value." If, for example, the interest rate is high because the borrowers of the loan are credit-impaired or default-prone, then this is a justification that tends to push away from a finding of substantive unconscionability. Finally, a court may consider whether there are market imperfections that make it less likely that the price was set by a "freely competitive market" and therefore more susceptible to unconscionability." [citations omitted.] *CashCall*, *supra*, at 982-984.

Donohue has made a sufficient showing of procedural and substantive unconscionablity. While this court fully recognizes that Donohue holds a responsible position with the City of Walnut Creek, is literate and could have fully reviewed the Disclosure Statement, she was under significant financial distress when she took the bait of Gaia's "pre-approved" cash advance. Rather than allow her to determine exactly how much cash she needed (and thus determine her monthly loan repayment), Gaia presumably took advantage of her cash flow crisis and wired the full $4,000 to her. Once in her bank account, Gaia could confidently expect that she would not partially rescind it. This form of "surprise" satisfies the procedural unconscionablity prong.

Donohue also has sufficiently demonstrated the presence of some substantive unconscionability. This prong "often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision.' '[A] contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.'" [citations omitted.] *Sarun v. Dignity Health*, 41 Cal.App.5th 1119, 1135 (2019). Gaia apparently operates across the United States and presumably does not obtain its capital at the exorbitant interest rates it charges. Its 240% interest rate leaves a borrower in an untenable place: borrow the funds that are needed to pay critical expenses, knowing that the interest may far exceed the amount that you borrowed and prevent you from ever repaying the loan balance. Donohue also has provided some evidence that Gaia's rates in December 2017 were significantly higher than what the consumer loan market typically charged. Donohue was

4

anticipating a loan with an interest rate of no more than 100 per cent. While Gaia certainly was entitled to some "extra protection," its 240% interest rate shocks the conscience.

While Dononhue's evidence is slim, it is unrebutted. Gaia chose not to defend its loan, and this court is only as good as the evidence before it.

Having determined that the loan was unconscionable, this court must fashion a remedy. California Civil Code § 1670.5 gives this court wide latitude in determining an appropriate interest rate. That code section provides in pertinent part that "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or . . . enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Donahue anticipated an interest rate that would not exceed 100%. Given her experience with the consumer loan marketplace, the court presumes that Donohue would have found that rate not unduly onerous nor unexpected. Accordingly, **by February 24, 2020**, Gaia shall file an amended proof of claim consistent with this memorandum.

**\* \* \* END OF ORDER \* \* \***

ORDER

Case: 19-41271    Doc# 65    Filed: 01/27/20    Entered: 01/27/20 17:10:18    Page 5 of 6

**<u>COURT SERVICE LIST</u>**

Amanda Susanne Donohue
215 Wildflower Drive.
Martinez, CA 94553

Other recipients are ECF participants

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

6